**TOLEDO (City), Plaintiff, v. SIMS, and five other, Defendant.**

Municipal Court, Toledo.

Nos. 641014, 641015, 641016, 641017, 641018, 641019.

Decided September 30, 1960.

Arthur Wilkowski, Pros. Atty., for plaintiff.
Abe M. Steinberg, for each defendant.

### OPINION

By DRISCOLL, J.

When the above-named defendants appeared in court, responding to separate affidavits charging each with the criminal violation of the Toledo Municipal Code, the prosecuting attorney and counsel for the

several defendants agreed, subject to approval by the court, that the several cases should be considered together. In support of their agreement, counsel for the defendants stated in part as follows:

"MR. STEINBERG: So we do not misunderstand one another, and for the record, these men were in the block bounded by 12th Street on the east and by 13th Street on the west. It is zoned commercial. There are a series of nine or ten stores there—I think most of them are occupied. These men, with the exception of Mr. Fred Smith and that—this gentleman, Mr.—

"MR. WARNER: Warner.

"MR. STEINBERG: Mr. Warner, has a place of business in that block, and the police came and converged from each end of the block, like a net would drag in fish. They arrested these men whom they were able to snare. I say further, these men were not together. They weren't doing anything in concert. The only two people who were together was Mr. Smith and Mr. Warner, who were seated in Mr. Warner's automobile, conversing about matters of business. That is what happened.

"THE COURT: Can you agree to that?

"MR. WILKOWSKI: I agree to that."

Although the foregoing excerpt is not pertinent to the legal issue involved, it clarifies the factual situation relative to the purpose, policy and significance of the constitutional issue, which is raised as a consequence of a demurrer as hereafter will appear.

The allegations in each of the six affidavits are identical except for transposition of phrases. The following is representative of all:

"THE STATE OF OHIO, :
City of Toledo, : ss. In the Toledo Municipal Court
Lucas County, :

"Before me, M. Zietlow, Clerk of The Toledo Municipal Court, personally came B. Raitz and E. Kusina, who, being duly sworn according to law, deposes and says, that on or about the 10th day of August, A. D., 1960, at the said City and County, one Fred Smith was found congregating at Beacon and 12th. This place is a source of constant complaint. He was along with 20 to 25 others. These people have been told many times about congregating, and further deponent says not; contrary to the form of an Ordinance of said City in such cases made and provided.

Affiant X BENJAMIN RAITZ

Sworn to and subscribed before me, this 10th day of August, A. D. 1960.

LANDON E. HALL
Clerk of The Toledo Municipal Court
s/ M. Zietlow, Deputy Clerk."

The imperfections of the affidavit, although not fatal for the purpose of charging the offense intended, are readily apparent, and were waived by counsel for the defendants by reason of his agreement that the ordinance purporting to establish congregating a crime is illegal, and for the further reason that, upon leave granted therefor, his written demurrer, filed in one case and directed in each of the other cases, challenged the constitutionality of any ordinance under which the

affidavits purported to charge the defendants with the commission of a crime.

In relating the allegations in the affidavits to the purported offense, both counsel referred to Toledo Municipal Code, Section 17-5-11, quoted in full as follows:

"17-5-11.  CONGREGATING ON STREETS, ETC.

"It shall be unlawful for persons having no occupation or business at the places herein named to congregate upon or occupy the sidewalks or corners of any of the streets of the City, or in front of any place of worship, assemblage, or amusement."

Assuming the term "congregating," as employed in the affidavits, might have reference also to and also would include the word "assemble," and that the affiant intended to charge the defendants with the violation of Section 17-5-10 of the Toledo Municipal Code, said section is quoted in full as follows:

"17-5-10.  LOITERING IN STREETS.

"It shall be unlawful for three or more persons to assemble except at public meeting of citizens on any of the sidewalks, streets, street corners, vacant lots or public alleys, and there conduct themselves in a manner annoying to persons passing by or occupants of adjacent buildings."

It will be observed that neither section quoted in full above provides nor refers to any penalty for the violations of the provisions of either. However, in a subsequent section of the Toledo Municipal Code, Section 17-5-13, it is provided:

"17-5-13.  PENALTY.

"Any person offending against any one of the provisions of sections 17-5-10, 17-5-11, or 17-5-12 shall, upon conviction, be fined in any sum not exceeding $50.00 and costs of prosecution, and stand committed to the workhouse until paid."

On the issue of the constitutional right to assemble or congregate as guaranteed to all persons, the Constitution of the United States, First Amendment, provides:

"Congress shall make no law . . . abridging . . . the right of the people to assemble . . ."

By the reserved powers of sovereignty, the people of Ohio have affirmed the constitutional right to all its inhabitants to assemble or congregate. **Article I, Section 3, Ohio Constitution**, provides:

"The people have a right to assemble together in a peaceable manner. * * *."

Neither the Constitution of the United States nor the Constitution of Ohio limits the rights of any of its inhabitants to congregate or assemble upon conditions of person, place or purpose, or subject to annoyance or complaint of others who have granted and are subject to the same constitutional rights and duties, whether they be neighbors or public officials, organized or unorganized.

Obviously and admittedly proper laws may be passed by the legislative authority in the reasonable exercise of its police power to protect public health, morals, safety and general welfare but not to an extent to deny arbitrarily, capriciously and discriminatingly the constitutional

rights of inhabitants to assemble. City of Zanesville v. Wilson, 130 Oh St 286; Cincinnati v. Sorrell, 141 Oh St 535; and Cancer Society v. Dayton, 160 Oh St 114.

The Court of Appeals of Ohio, Eighth District, Cuyahoga County, on May 9, 1960, decided the case of City of Cleveland v. Baker, 83 Abs 502. There Judge Fess of the Sixth District and Judges Younger and Guernsey of the Third District struck down an ordinance almost identical to those in issue as being unconstitutional and void. The ordinance there provided:

"13.0941 (2959-5). UNLAWFUL CONGREGATION ON SIDEWALKS: PENALTY.

It shall be unlawful for persons having no occupation or business at the places hereinafter named, to congregate upon or occupy the sidewalks, or at the corners of any street of the city, or in such manner as to occupy the sidewalks in front of any dwelling or place of business in the city, or in such manner as to occupy the sidewalks in Monumental park or other public parks of the city, or in front of any place of worship or amusement. And it shall be and is hereby made the duty of the police force of the city to prevent such gatherings or occupation of sidewalks and street corners, and to arrest persons found violating the provisions of this section. Whoever violates any provision of this section shall, on conviction thereof, be fined in any sum not exceeding fifty dollars."

In all material provisions the Toledo ordinances are substantially the same as the Cleveland ordinance quoted above. It will be noted, however, that the Cleveland ordinance emphasizes by direction what police officers in Cleveland or in Toledo are required to do by virtue of their office as policemen; namely, to prevent crime and to arrest those found by them in the act of committing crime.

In that case the defendant-appellant, a commercial artist concerned with Evangelism, held several street meetings on the sidewalk in front of the Terminal Tower during the summer of 1959 on Thursday evenings when stores were open and pedestrian traffic was heavy. On the night of his arrest he came there with a minister, two other friends and the wife of one of them. At about 8:30 P. M. they took a position before the window with a bank sign at the eastern angle of the building wall, setting up an easel with bible verses and an American flag. The wall at this point was about fifteen feet between doors and the distance to the curb was forty feet. The defendant-appellant then spoke his religious views to passersby, followed by one of the laymen and the minister.

Thereupon, following complaint of the Chief of the Terminal Building Police, municipal police arrived at the scene and upon the defendant's refusal to move the speaking to a part of the Public Square reserved for public speaking, the defendant appellant was arrested.

The court in the opinion by Judge Younger made some very pertinent observations on the effects of the enforcement of such ordinance. In reference to the Cleveland ordinance and applicable to the Toledo ordinances, Judge Younger stated:

"However, this ordinance grants to the police force of the city the absolute discretion of preventing any gathering or congregating of persons and to prevent them to occupy the sidewalks and to arrest anyone found in violation. It could permit the arrest of two or more friends or relatives found conversing on the sidewalk before or after church or before entering or after leaving a place of amusement. It could permit the arrest of two or more lawyers or doctors found on the sidewalk discussing their cases. It could prevent a group of friends in the city for a convention from meeting in groups while touring the city either for business or pleasure. Many other situations could be enumerated which would convert conduct which is prima facie lawful into that which is criminal under this ordinance."

Judge Younger's observations projected to situations in Toledo, might very well include the arrests and convictions under Section 17-5-10 and 17-5-11 of persons congregating and loitering while waiting for employment referrals, or while congregating and loitering on the City Mall or Civic Center, or men discussing public affairs at the corners of the Public Library Park, or others congregating and loitering in front of display windows during seasonal displays of merchandise, or others congregating and loitering in anticipation of parades or vehicles of mass transportation systems.

Under the provisions of Section 17-5-10 and 17-5-11, arrests and prosecutions, as in the present instance, would have been effective as against Edmund Pendleton, Peyton Randolph, Richard Henry Lee, George Wythe, Patrick Henry, Thomas Jefferson, George Washington and others for loitering and congregating in front of Raleigh Tavern on Duke of Gloucester Street in Williamsburg, Virginia, at any time during the summer of 1774 to the great annoyance of Governor Dunsmore and his colonial constables.

Reason dictates that this court follow the decision in the case of **Cleveland v. Baker, 83 Abs 502**, as stated in the following headnotes:

"4. An ordinance which delegates authority as to its enforcement without laying down any rules or standards, properly within the police power, for such decision, grants an arbitrary power to interfere with constitutional rights and is void."

"5. An ordinance which grants to the police force of the city the absolute discretion of preventing any gathering or congregating of persons and to prevent them from occupying the sidewalks and to arrest anyone found in violation thereof is unconstitutional and void."

On the rational expressed in the case of Cleveland v. Baker, the court in this case finds that the demurrer directed to the various affidavits, considered herein together, should be sustained as to each affidavit for the reason that Sections 17-5-10 and 17-5-11 of the Toledo Municipal Code are violative of the constitutional rights of these defendants and is void for the further reason that the allegations in the various affidavits fail to allege the commission of any crime, subject to punishment as provided for in said ordinances. It is, therefore, ordered that each affidavit be, and it hereby is dismissed and each defendant is discharged.